**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| DARLENE ALEXANDER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-12-817 |
| | § | |
| SERVISAIR, LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION ON**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter was referred by United States District Judge Vanessa D. Gilmore, for full pre-trial management, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket Entry #21). In this case, Plaintiff Darlene Alexander ("Plaintiff," "Alexander") brings claims against her former employer, Servisair, LLC ("Defendant," "Servisair"), for violations of the Family and Medical Leave Act of 1993 ("FMLA") and the Fair Labor Standards Act ("FLSA"). Pending before the court is a motion for summary judgment that was filed by Defendant. (Defendant Servisair's Motion for Final Summary Judgment and Brief in Support ["Motion"], Docket Entry #19). Plaintiff has responded in opposition to that motion. (Plaintiff's Response to Defendant's Motion for Summary Judgment ["Response"], Docket Entry #20). Having reviewed the pleadings, the evidence, and the applicable law, it is RECOMMENDED that Defendant's motion for summary judgment be DENIED.

**Background**

From June 4, 2007, through May 17, 2011, Darlene Alexander was employed by Servisair, LLC. (Plaintiff's Original Complaint ["Complaint"], Docket Entry #1, at 2). For more than three years, Alexander worked as a "payroll supervisor," but she took a position as a "payroll accountant" in November 2010. (*Id*. at 3; Motion at 4). The payroll accountant position had previously been

held by Sandra Rayo ("Rayo"), who then trained Plaintiff for that job, and became her supervisor. (Response at Exhibit ["Ex."] 1, at 20). According to Plaintiff, as a payroll accountant, she "reconciled payrolls and sent them to the proper cost center," and "sent information to the company's 401K provider."[1] (Complaint at 3). Plaintiff also states that, as a payroll accountant, she typically worked three to five hours of overtime each week. (Response at Ex. 1, at 20).

In April 2011, Alexander "began feeling ill." (Complaint at 3; Response at Ex. 1, at 7). She began to suffer regularly from "heart palpitations," and "anxiety and stress." (*Id.*). Those symptoms grew progressively worse. (*Id.*). On May 9, 2011, at approximately 3:00 p.m., as she was about to leave for a late lunch, Alexander felt very ill. (*Id.* at Ex. 1, at 8). She claims that her hands became "clammy," that she was "sweating around [her] forehead," and that her heart was "pounding to where it just felt like it was going to come out of my body." As a result, she believed that she was ill enough to go home for the rest of the day. (*Id.* at Ex. 1, at 7). Because Rayo was not available, Alexander called her, and left the following voice mail message:

> Sandra, this is Darlene. I went to lunch, but I've become ill. I'm not feeling well, and I won't be returning for the day.

(*Id.*). Alexander then returned home, and stayed in bed for the rest of the day. (*Id.*).

---

[1] Plaintiff summarizes her duties as a payroll accountant as "[mostly… perform[ing] data entry." (Complaint at 3). She alleges that she "did not supervise anyone," that she "had no authority to make financial decisions for the company," and that she "had no authority to make payroll changes." (*Id.*). Defendant denies all of these allegations, and claims that Alexander had many opportunities to "exercise[] independent judgment and discretion with regard to matters of significance to Servisair." (Defendants' First Amended Answer to Original Complaint ["Answer"], Docket Entry #14, at 4; Motion at 5).

On May 10, 2011, Alexander was still feeling ill. (*Id.* at Ex. 1, at 9). She called Rayo at 7:00 a.m.,[2] and left a voicemail message that she would not be in that day due to her illness. (*Id.*). On May 11, 2011, at 7:30 a.m., Alexander left Rayo another message to "let her know that [she] still wasn't feeling well." (*Id.*). That same day, Plaintiff went to see Dr. Angelina Ayoola ("Dr. Ayoola"), her primary care physician, because she did not seem to be "getting better." (*Id.*). Dr. Ayoola performed an EKG, and the results were abnormal. (*Id.*). The doctor recommended that Plaintiff consult with a cardiologist and a therapist, and she wrote a note certifying that Alexander should be excused from work through May 20, 2011. (*Id.* at Ex. 1 & 3).

On May 12th, 2011, at 7:30 a.m., Alexander left Rayo another voicemail message informing her that she remained too ill to return to work. (*Id.* at Ex. 1, at 9-10). On that day, she consulted with Dr. Glenn J. Bricken ("Dr. Bricken"), a clinical psychologist. (*Id.*). While in Dr. Bricken's waiting room, Rayo returned her call, and Alexander told her the following:

> I wasn't feeling well, had some issues with my heart that I was following up with and that I was going to be applying for FMLA and that I was currently at a doctor's office and could not talk to her any longer.

(*Id.*). Alexander did not give Rayo an opportunity to discuss it further, because she "was literally sitting at the doctor's office." (*Id.*). Dr. Bricken examined Plaintiff, and identified a number of symptoms, including rapid heart beat, shortness of breath, headaches, and nausea; "difficulty with concentration"; crying spells; panic attacks; and nervousness. (*Id.* at Ex. 3A). Dr. Bricken diagnosed Alexander as suffering from "panic disorder" and "adjustment disorder mixed," and he wrote a letter that states, in relevant part:

---

[2] In her deposition, Alexander testified that Rayo generally arrived at work between 7:30 and 8:00 a.m. (Response at

3

> Ms. Darlene Alexander was seen in our office today for stress related symptoms. We recommend that she not to [sic] return to work at this time.

(*Id.* at Ex. 4).

On May 13, 2011, Alexander called the Reed Group, a third-party vendor that was employed by Servisair to handle FMLA matters. (*Id.* at Ex. 1, at 11). In that call, Plaintiff inquired about applying for leave under the Act. (*Id.*). Alexander was already familiar with Servisar's FMLA policies and procedures, because, when she was the payroll supervisor, she had been designated to receive notices from the Reed Group about employee FMLA requests. (*Id.*). In response to Plaintiff's call, the Reed Group sent an email to the "Servisair HR / Supervisor" that stated, "Please be advised that Darlene Yvette Alexander submitted a leave request to Reed Group on 05/13/2011 due to Employee Serious Health Condition."[3] (*Id.* at Ex. 6). The notice also confirmed that Alexander was "[e]ligible for FMLA." (*Id.*). Plaintiff completed all of the paperwork required, and sent it to the Reed Group. (*Id.* at Ex. 1, 6, 8, 9). On June 6, 2011, the Reed Group sent Alexander a letter notifying her that her leave request had been approved from May 10, 2011, through June 3, 2011. (*Id.* at Ex. 9).

In the interim, however, on May 18, 2011, Rayo sent Alexander a document titled "Notice of Change in Employment Relationship," that informed her that she had been terminated, effective May 17, 2011, because she had been "absent without approval from [her] position since May 13, 2011." (*Id.* at Ex. 10). The notice was sent to Alexander's home, by certified mail, along with a final paycheck. (*Id.*).

---

Ex. 1, at 9).

[3] Servisair contends that it did not receive the Reed Group's initial letter in a timely manner, because it was mistakenly sent to Alexander's own email account. (Motion at 10).

On May 20, 2011, Alexander called Rayo to "see why [she] had not received [her] direct deposit" payment. (*Id*. at Ex. 1, at 13). Rayo told her that she had been fired on May 17, 2011, for "job abandonment." (*Id*.). Alexander reminded Rayo of her FMLA application, and said, "Did you ... not get my paperwork?" (*Id*.). Rayo did not comment. (*Id*.).

On March 16, 2012, Alexander filed this lawsuit, claiming that Servisair violated her rights under the FMLA and the FLSA. (Complaint at 4-6). She seeks monetary damages, reinstatement, or front pay in lieu of reinstatement, attorney's fees, interest, and costs. (*Id*. at 6). On April 1, 2013, Servisair filed a motion for final summary judgment, and Alexander has responded in opposition to the motion. Having considered the pleadings, the evidence, and the applicable law, it is recommended that Defendant's motion be denied.

**Standard of Review**

Summary judgment is appropriate when "'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant[] [is] entitled to judgment as a matter of law.'" *Pustejovsky v. Pliva, Inc*., 623 F.3d 271, 275 76 (5th Cir. 2010) (quoting FED. R. CIV. P. 56(c); citing *Breaux v. Halliburton Energy Servs*., 562 F.3d 358, 364 (5th Cir. 2009)). "'Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.'" *Hillman v. Loga*, 697 F.3d 299, 302 (5th Cir. 2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)). Under Rule 56(c), the moving party "bears the initial burden of 'informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Taita Chem. Co. v. Westlake Styrene Corp*., 246 F.3d 377, 385 (5th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477

5

U.S. 317, 323 (1986)); *see Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The party moving for summary judgment "'must demonstrate the absence of a genuine issue of material fact,' but 'need not negate the elements of the non-movant's case.'" *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994)); *see Wallace v. Texas Tech Univ*., 80 F.3d 1042, 1047 (5th Cir. 1996). If the moving party fails to meet its initial burden, its motion for summary judgment must be denied, regardless of the non-movant's response. *See Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001); *Little*, 37 F.3d at 1075.

When the moving party has met its Rule 56 burden, the non-moving party cannot merely rest on the allegations in her pleadings. *See Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 50 (5th Cir. 2005); *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc*., 66 F.3d 89, 92 (5th Cir. 1995). Rather, she is required to "'go beyond the pleadings'" and produce probative evidence to show "'that there is a genuine issue for trial.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075; citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87); *see Izen v. Catalina*, 398 F.3d 363, 366 (5th Cir. 2005); *Taita Chem. Co*., 246 F.3d at 385. If she does so, her evidence "is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *see Hillman*, 697 F.3d at 302; *Taita Chem. Co*., 246 F.3d at 385. However, if the non-movant fails to respond appropriately, or if she fails to respond at all, summary judgment is not awarded to the moving party simply by default. *See Ford Evans v. Smith*, 206 Fed. Appx. 332, 334 (5th Cir. 2006); *Hetzel v. Bethlehem Steel Corp*., 50 F.3d 360, 362 n.3 (5th Cir. 1995); *Hibernia Nat'l Bank v. Administracion Cent. Soc. Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985); *John v. State of La*., 757 F.2d 698, 708 (5th Cir. 1985). Instead, as always, summary

judgment is appropriate only if the moving party has demonstrated the absence of a genuine issue of material fact, and shown that judgment is warranted as a matter of law. *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006); *Hetzel*, 50 F.3d at 362 n.3 (quoting *Hibernia Nat'l Bank*, 776 F.2d at 1279).

**Discussion**

In its motion for summary judgment, Servisair argues that Alexander's "FMLA claims must fail as a matter of law because she cannot show that Servisair in anyway interfered with her FMLA rights." (Motion at 13-19). Servisair also contends that "Plaintiff's FLSA claim must fail," because she is exempt from the Act's overtime provisions. (*Id*. at 19-25). Alexander responds that, not only has she raised genuine issues of material fact on both causes of action, but that she has direct evidence that "Defendant brazenly violated the Family [and] Medical Leave Act." (Response at 1).

*Family and Medical Leave Act*

The Family and Medical Leave Act "entitles eligible employees to take up to 12 work weeks of unpaid leave per year," under specific circumstances. *Coleman v. Court of App. of MD*, ___ U.S. ___, 132 S. Ct. 1327, 1332 (2012) (citing 29 U.S.C. § 2612(a)(1)). Such circumstances include "the employee's own serious health condition when the condition interferes with the employee's ability to perform at work." *Id.*; *see Milton v. Texas Dep't of Crim. Justice*, 707 F.3d 570, 574 (5th Cir. 2013). "'Following a qualified leave period, the employee is entitled to reinstatement to the former position or an equivalent one with the same benefits and terms.'" *Id.* (quoting *Bocalbos v. National W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998)); *see Downey v. Strain*, 510 F.3d 534, 537 (5th Cir. 2007).

"[T]he FMLA contains two distinct provisions." *Nero v. Industrial Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999) (citing *Bocalbos*, 162 F.3d at 383). One provision "creates a series of entitlements or substantive rights," including the employee's "right to return to the same position after a qualified absence." *Id.* (citing *Bocalbos*, 162 F.3d at 383). "'Because the issue is the right to an entitlement, the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer.'" *Id.* (quoting *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998)). The second provision "is proscriptive, and protects employees from retaliation or discrimination for exercising their rights under the FMLA." *Id.* (citing *Hodgens*, 144 F.3d at 159; 29 C.F.R. § 825.220(c) (1997)); *see* 29 U.S.C. § 2615(a)(2). "[T]he Act protects employees from interference with their leave as well as against discrimination or retaliation for exercising their rights." *Bolcabos*, 162 F.3d at 383 (citing *Hypes v. First Commerce Corp.*, 134 F.3d 721, 726 (5th Cir. 1998)). In this case, Plaintiff claims both that Servisair interfered with her rights under the FMLA, and that it retaliated against her for exercising those rights. (Complaint at 4-5).

*Interference*

In her Complaint, Alexander alleges that Servisair interfered with her rights under the FMLA by terminating her, rather than restoring her to the same or a comparable position following her illness. (Complaint at 4-5). Under the FMLA, an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). A plaintiff makes a *prima facie* case under § 2615(a)(1) by showing evidence of the following:

(i) that she was "an eligible employee";

(ii) that the defendant was "an employer subject to the FMLA's requirements";

8

(iii) that she was "entitled to leave";

(iv) that she "gave proper notice of her intention to take FMLA leave"; and

(v) that the defendant "denied her the benefits to which she was entitled under the FMLA."

*Lanier v. University of Tex. SW Med. Ctr.*, ___ Fed. Appx. ___, 2013 WL 2631316, at *2 (5th Cir. June 12, 2013) (citing *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012)); *accord Grant v. JPMorgan Chase Bank, N.A.*, 2012 WL 5966644, at *4 (S.D. Tex. 2012) (Miller, J.). Alexander has presented evidence that she was an "eligible employee," and that she was "entitled to leave." (Response at Ex. 9). Servisair admits that it is an "employer" for FMLA purposes. (Answer at 5; *see* Complaint at 4). On this record, then, Plaintiff has clearly established the first three elements of a *prima facie* case. In fact, Defendant does not challenge Plaintiff's ability to satisfy the first three elements of a *prima facie* case of interference. (Motion at 13-15). Defendant argues, however, that Plaintiff cannot show evidence that she "gave proper notice of her intention to take FMLA leave," and that she was subsequently denied benefits under the Act. (*Id.*).

To show that she "gave proper notice of her intention to take FMLA leave," Plaintiff has provided evidence, through deposition testimony, that she informed her supervisor on May 12, 2011, that she "was going to be applying for FMLA." (Response at Ex. 1, at 9-10, 18). Defendant's FMLA policy states that "[a]n employee is expected to promptly notify his/her supervisor as soon as the need for FML is learned."[4] (Motion at Ex. 4). It appears, then, that Plaintiff satisfied this notice requirement by informing Rayo of her intentions. Servisair's FMLA policy also requires an employee "to contact the Human Resources Department or its designee," and it names "The Reed

---

[4] The policy requires 30 days' advanced notice "[i]f the need for FMLA leave is foreseeable." (*Id.* at Ex. 4). On this record, the evidence shows that Alexander had no reason to believe that she needed leave before May 11, 2011, one day before she gave notice. (Response at Ex. 1, 6, 8, 9).

9

Group" as that designee, for leave requests under the Act. (*Id*.). Plaintiff has shown that she satisfied this requirement by contacting the Reed Group on May 13, 2011. (Response at Ex. 1, at 11). That contact is evident from the email that the Reed Group sent to Servisair on the same date, informing it that Plaintiff had requested FMLA leave. (*Id*. at Ex. 1, 6).

Defendant insists, however, that it never received the notice of Plaintiff's FMLA request. (Motion at 9-12). But Alexander has submitted evidence, through her deposition testimony, and the sworn statement from Irene Acevedo ("Acevedo"), Servisair's HR Generalist during the time in question, that shows otherwise. (Response at Ex. 1, 11). In particular, Acevedo states that Rayo should have known that the Reed Group was handling the request, and that Rayo did, in fact, know that Plaintiff had requested FMLA leave, at the time she made the decision to terminate her employment, as follows:

> Ms. Rayo was well aware of the FMLA policy and procedure where an employee who was out of the office 3 or more consecutive days due to illness, with either the manager and/or the employee was to contact the "Reed Group" and report their absence. In general, Reed would then contact the manager or HR to communicate the employee has called and begin the FMLA process.
>
> … because we had knew [sic] of the policy and had access to review all employee FMLA requests through Reed's website, we were able to review who had applied and who had not. Ms. Rayo was aware of Ms. Alexander's FMLA request when we both looked at the Reed group's website to review any recent FMLA requests. The decision to terminate was done having this knowledge as well as the knowledge that the notification was emailed directly to Ms. Alexander's work email.

(*Id*. at Ex. 11). Clearly, then, there is a genuine issue of material fact on the extent of Servisair's knowledge.

Defendant further argues that Plaintiff failed to follow its FMLA policy that requires employees to "call in" every two days while on leave. (Motion at 5). Under the FMLA, "[a]n employer may require an employee to comply with the employer's usual and customary notice and

10

procedural requirements" regarding the duration of her leave." 29 C.F.R. § 825.302(d). Servisair, however, provides no evidence that employees are required to "call in" every two days while on FMLA leave.[5] In addition, Alexander has rebutted Defendant's claim by testifying that she satisfied the policy that was in effect to the best of her knowledge:

> Q  Are you aware that while you're out on FMLA that you're still required to follow the normal absentee procedures, the call-in procedures?
>
> A  Yes, I'm aware, but there are no call-in procedures other than letting them know when you've gone out.
>
> I had already spoke [sic] with Sandra to let her know that I was filing for FMLA. And as an employee, I've never known an employee to call in each day to say that, "I'm sick. I'm on FMLA.

(Response at Ex. 1, at 18). Alexander emphasizes her testimony that the Reed Group, as Servisair's agent, advised her that she need not take further action to obtain her FMLA benefits. (*Id.* at Ex. 1, at 28). Moreover, under Fifth Circuit precedent, "knowledge alone" of an employer's unique notification procedures does not justify the termination of an employee who is otherwise qualified for benefits. *See Saenz v. Harlingen Med. Ctr., L.P.*, 613 F.3d 576, 582 (5th Cir. 2010). It is clear, in this case, that Plaintiff has raised a fact issue on whether she "gave proper notice" of her intention to take leave under the FMLA.

In support of her claim that Servisair "denied her the benefits to which she was entitled under the FMLA," Plaintiff points out that she was terminated, rather than restored to the same or a similar

---

[5] In support of its contention that Plaintiff was required to call in every two days while on medical leave, Defendant points to a provision in its "Employee Code of Conduct" that includes, as grounds for disciplinary action, "a[]bsence for any two (2) consecutive days or as otherwise specified by the applicable Collective Bargaining Agreement (No call/No show) except where the failure to give advanced notice is beyond the employee's control." (Motion at Ex. 5). Defendant did not submit a copy of a collective bargaining agreement, however. Further, even if applicable, it is not clear that the policy required Plaintiff to call in every two days. On the other hand, the evidence shows that Plaintiff left a message for, or spoke to, Rayo on each of the three days she was absent, until the date she filed for leave under the FMLA. (Response at Ex. 1, at 8-20). Given these circumstances, Defendant has not shown that Plaintiff was required to call in sick every two days, following an application for FMLA leave.

position when her leave expired. (Response at Ex. 1, 6). In its motion, Servisair, however, contends that she was not denied FMLA benefits, because her leave request was "ultimately approved." (Motion at 13). In so arguing, however, Defendant ignores the fact that the chief benefit under the FMLA is the ability to return from leave to "the position of employment held by the employee when the leave commenced," or the equivalent. *See* 29 U.S.C. § 2614(a)(1). Plaintiff has shown, then, that there is a fact issue on whether she was denied the benefits due to her under the FMLA.

Because Plaintiff has raised genuine issues of material fact on all elements of her *prima facie* case of interference, Defendant is not entitled to summary judgment on that claim.

*Retaliation*

Plaintiff also claims that Servisair retaliated against her because she took FMLA leave. (Complaint at 4-5). To establish a *prima facie* case of retaliation, which arises under § 2615(a)(2) of the Act, a plaintiff must make the following showing:

> (1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) that she was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because she took FMLA leave.

*Hunt*, 277 F.3d at 768; *accord Lanier*, 2013 WL 2631316, at *3; *Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008). In this case, there is no dispute that Plaintiff was given FMLA leave for the period in question, or that she was terminated. The issue, then, is whether she was terminated because she took that leave. *See id*.

In support of her claim, Alexander underscores Acevedo's statement that Rayo was aware that she had applied for FMLA leave when the decision to terminate her was made. (Response at Ex. 11). Plaintiff has also submitted evidence that she called in to Servisair to report her illness on May 10th and 11th, 2011, and that she told Rayo on May 12th that she was applying for FMLA

12

leave. (*Id*. at Ex. 1, 2). Plaintiff was terminated for "job abandonment" on May 18, 2011, to be "effective May 17, 2011," or just three business days following the application for FMLA leave. (*Id*. at Ex. 1, 9). Courts have held that "termination during the 15-day compliance period [to provide proof of the need for leave] could itself be deemed a FMLA violation." *Saenz*, 613 F.3d at 582 n.7. On this record, then, Plaintiff has established a *prima facie* case of retaliation under the FMLA.

"The Fifth Circuit applies the *McDonnell Douglas* framework to analyze retaliation claims under the FMLA." *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001); *accord Richardson v. Monitronics Int'l, Inc*., 434 F.3d 327, 332 (5th Cir. 2005). Under that framework, if a plaintiff establishes a *prima facie* case, "the employer has an opportunity to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Willis v. Coca Cola Enters., Inc*., 445 F.3d 413, 420 (5th Cir. 2006) (citing *Johnson v. Louisiana*, 351 F.3d 616, 621 (5th Cir. 2003)). If the employer "offers evidence of such a legitimate reason, the burden shifts back to the plaintiff-employee to raise a genuine issue of material fact that this non-discriminatory reason is merely pretextual." *Id*. (citing *Johnson*, 351 F.3d at 621); *see Richardson*, 434 F.3d at 332.

In this case, Servisair maintains that it "has articulated a legitimate nondiscriminatory reason for Plaintiff's termination—job abandonment on account of Plaintiff's failure to follow Servisair's reporting procedures." (Motion at 17). However, because Plaintiff has raised genuine issues of material fact on that contention, those issues preclude entry of summary judgment for Servisair.

*Fair Labor Standards Act*

Plaintiff alleges that Defendant misclassified her as an exempt employee while she was a payroll accountant, so that she was wrongfully denied overtime pay. (Complaint at 5; *see* Motion at

13

14). The FLSA "requires employers to compensate employees engaged in commerce for all hours worked over forty each week at the rate of one and one-half times their regular rate." *Songer v. Dillon Resources, Inc.*, 618 F.3d 467, 471 (5th Cir. 2010) (citing 29 U.S.C. § 207(a)(1)); *see Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1041 (5th Cir. 2010). The FLSA does not mandate, however, that every employee be compensated for more than forty hours of work per week. *See Songer*, 618 F.3d at 471. Instead, the Act expressly exempts certain classes of employees from its "overtime requirements." *Id*. (citing 29 U.S.C. § 213). One such exemption includes "those employees working in a bona fide executive, administrative or professional capacity." *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000) (citing 29 U.S.C. § 213(a)(1); *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1224 (5th Cir. 1990)). The regulations interpreting the FLSA provide, as follows:

> (a) The term "employee employed in a bona fide administrative capacity" in section 13(a)(1) of the Act shall mean any employee:
>
> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a). Further, the FLSA exemptions "are construed narrowly against the employer," and "the employer bears the burden to establish a claimed exemption." *Songer*, 618 F.3d at 471; *see Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974); *Dalheim*, 918 F.2d at 1224.

Here, there is evidence that Alexander earned a salary of $53,000 per year, or approximately $1,020 per week. (Motion at Ex. 10). Plaintiff concedes, in fact, "that Servisair has shown that it met the first prong of the administrative exception in that Alexander earned more than $455 per week." (Response at 13). Plaintiff argues, however, as follows:

> Defendant has failed to meet the "primary duty" second prong, and especially failed to meet the third prong in that it has presented no credible or uncontradicted evidence that Alexander exercised discretion and independent judgment with respect to significant matters.

(*Id.*).

In its motion, Defendant contends that Alexander's duties were "nonmanual office duties" and that they "were directly related to Servisair's management on general business operations," as required to trigger the administrative exemption. (Motion at 15). In support of this argument, Servisair points to four items of evidence: Plaintiff's testimony; a copy of her resume; a document titled "Action Plan for Payroll Accountant"; and a description of the payroll accountant position that Rayo gave to Alexander when she began as a payroll accountant. (*Id.* at Ex. 1, 2, 3, 10). None of that evidence, however, shows that Plaintiff's job responsibilities were "nonmanual." To the contrary, they support Plaintiff's claims that her duties were limited to data entry, simple arithmetic, and fact checking. (*See id.*). Indeed, in her resume, Alexander describes her former "payroll supervisor" job at Servisair as including such "nonmanual" tasks as acting as a "[l]iaison between associates and executive management," and as being "[r]esponsible for supervision of three Payroll associates." (*Id.* at Ex. 2). On that same resume, however, Alexander identifies the following as her duties as a "payroll accountant": "Responsible for Reconciling Bi-Weekly and Monthly GL data in AS400 system." (*Id.*). Further, none of the deposition excerpts cited by Defendant shows clearly that Alexander performed "office or non-manual work directly related to the management or general

15

business operations of the employer or the employer's customers." *See* 29 C.F.R. § 541.200(a). Moreover, none of the evidence cited by Defendant shows conclusively that Plaintiff's job duties included "the exercise of discretion and independent judgment with respect to matters of significance." *See id.* Importantly, even had Defendant presented clear evidence that Plaintiff falls within the administrative exemption, Alexander has controverted that evidence with her own deposition testimony. (Response at 11-15 & Ex. 1, 14). In particular, Alexander testified that her job was mostly "data entry," that she "didn't supervise" anyone, nor did she have any "authority to make financial decisions for the company." (*Id.* at Ex. 1, at 3-8). Here, then, Plaintiff has shown that there is a genuine issue of material fact on her claim under the FLSA, and, so, summary judgment is not warranted.

In sum, genuine issues of material fact exist on all of Plaintiff's claims. For that reason, summary judgment is not appropriate.

**Conclusion**

Accordingly, it is **RECOMMENDED** that Defendant's motion for summary judgment be **DENIED**.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the

16

chambers of Judge Vanessa D. Gilmore, Room 9513, and to the chambers of the undersigned, Room 7007.

**SIGNED** at Houston, Texas, this 18th day of July, 2013.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**